UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**ORIGINAL**

CV 13 - 5731

REGINALD ANDERSON,

Plaintiff,

**COMPLAINT**

-against-

**JURY TRIAL DEMANDED**

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT and P.O. WAGNER, (Full Name
presently unknown), Shield Number 1090, SGT. DERRICK
MILLIGAN (Shield Number presently unknown), P.O.
GARY MESSINA (Shield Number presently unknown),
P.O. FLETCHER (Full Name and Shield Number presently
unknown), SERGEANT JAMES ARMSTRONG (Shield
Number presently unknown), P.O. MOORE (Full Name
presently unknown), Shield Number 469, P.O. TATE (Full
Name presently unknown), Shield Number 1809, P.O.
JOHN DOE (Full Name and Shield Number presently
unknown), DETECTIVE KELLY, (Full Name presently
unknown), Shield No. 2961, P.O. NELSON (Full Name
presently unknown), Shield Number 9564, P.O.
MATAPOLIS (Full Name and Shield Number presently
unknown),

TOWNES, J.

ORELSKY, M.J.

Defendants.

Plaintiff, REGINALD ANDERSON, by his attorneys, Law Offices of Philip J. Sporn, as and

for his complaining of the defendants, hereby alleges the following:

**PRELIMINARY STATEMENT**

1. Plaintiff REGINALD ANDERSON brings this action for compensatory damages,

punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 42 U.S.C.

§ 1988 for violation of his civil rights, as said rights are secured by said statutes and the

Constitutions of the State of New York and the United States.

**JURISDICTION**

2.     The action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

3.     Plaintiff REGINALD ANDERSON further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

4.     Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), (c) and § 1402(b) because the claims arose in this district and plaintiff REGINALD ANDERSON resides in this district.

## JURY DEMAND

5.     Plaintiff REGINALD ANDERSON respectfully demands a trial by jury of all issues in this matter pursuant to Fed.R.Civ.P. 38(b).

## THE PARTIES

6.     Plaintiff, REGINALD ANDERSON ("Mr. Anderson"), is and was at all relevant times hereto a citizen of the United States and a resident of the County of Queens and State of New York.

7.     Defendant, The City of New York ("City"), is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant, New York City Police Department ("NYPD"), is a charter agency of the City authorized to perform law enforcement functions in and for the City. Defendant City maintains

acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

14. Defendant, Police Officer Moore (Full Name presently unknown), Shield Number 469 ("P.O. Moore"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

15. Defendant, Police Officer Tate (Full Name presently unknown), Shield Number 1809 ("P.O. Doe"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

16. Defendant, Police Officer John Doe (Full Name and Shield Number presently unknown) ("P.O. Doe"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

17. Defendant, Detective Kelly (Full Name presently unknown), Shield Number 2961 ("Det. Kelly"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a detective and/or police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer and was acting under the supervision of said department and according to their official duties.

18. Defendant, Police Officer Nelson (Full Name presently unknown), Shield Number 9564 ("P.O. Nelson"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

19. Defendant, Police Officer Matapolis (Full Name and Shield Number presently unknown) ("P.O. Matapolis"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

20. Defendants, P.O. Wagner, Sgt. Milligan, P.O. Messina, P.O. Fletcher, Sgt. Armstrong, P.O. Moore, P.O. Tate, P.O. Doe, Det. Kelly, P.O. Nelson and P.O. Matapolis, refers to known and unknown named police officers who were at all relevant times hereto employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

21. That at all times relevant herein, P.O. Wagner was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

22. That at all times relevant herein, Sgt. Milligan was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

23. That at all times relevant herein, P.O. Messina was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and

engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

24. That at all times relevant herein, P.O. Fletcher was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

25. That at all times relevant herein, Sgt. Armstrong was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

26. That at all times relevant herein, P.O. Moore was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

27. That at all times relevant herein, P.O. Tate was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. He is sued individually and in his supervisory capacity.

28.     That at all times relevant herein, P.O. Doe was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties.  He is sued individually and in his supervisory capacity.

29.     That at all times relevant herein, Det. Kelly was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties.  He is sued individually and in his supervisory capacity.

30.     That at all times relevant herein, P.O. Nelson was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties.  He is sued individually and in his supervisory capacity.

31.     That at all times relevant herein, P.O. Matapolis was a supervisory employee of, and an agent, servant and/or employee of The City, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties.  He is sued individually and in his supervisory capacity.

32.     That at all times mentioned herein, the individual defendants were acting under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of The City and the State of New York.

33.     That at all times relevant herein, the City operated, maintained, managed, supervised and controlled a police department as part of and in conjunction with its municipal functions.

34.     That at all times relevant herein, P.O. Wagner was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

35.     That at all times relevant herein, Sgt. Milligan was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

36.     That at all times relevant herein, P.O. Messina was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

37.     That at all times relevant herein, P.O. Fletcher was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

38.     That at all times relevant herein, Sgt. Armstrong was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

39.     That at all times relevant herein, P.O. Moore was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

40.     That at all times relevant herein, P.O. Tate was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

41.     That at all times relevant herein, P.O. Doe was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

42.     That at all times relevant herein, Det. Kelly was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

43.     That at all times relevant herein, P.O. Nelson was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

44.     That at all times relevant herein, P.O. Matapolis was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendant under the theory of *Respondeat Superior*.

45.     That at all times relevant herein, P.O. Wagner was personnel of The City and NYPD.

46.     That at all times relevant herein, Sgt. Milligan was personnel of The City and NYPD.

47.     That at all times relevant herein, P.O. Messina was personnel of The City and NYPD.

48.     That at all times relevant herein, P.O. Fletcher was personnel of The City and NYPD.

49.     That at all times relevant herein, Sgt. Armstrong was personnel of The City and NYPD.

50.     That at all times relevant herein, P.O. Moore was personnel of The City and NYPD.

51.     That at all times relevant herein, P.O. Tate was personnel of The City and NYPD.

52.     That at all times relevant herein, P.O. Doe was personnel of The City and NYPD.

53.     That at all times relevant herein, Det. Kelly was personnel of The City and NYPD.

54.     That at all times relevant herein, P.O. Nelson was personnel of The City and NYPD.

55. That at all times relevant herein, P.O. Matapolis was personnel of The City and NYPD.

56. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Wagner.

57. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised Sgt. Milligan.

58. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Messina.

59. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Fletcher.

60. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised Sgt. Armstrong.

61. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Moore.

62. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Tate.

63. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Doe.

64. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised Det. Kelly.

65. That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Nelson.

66.     That at all times hereinafter mentioned and upon information and belief, The City and NYPD employed and supervised P.O. Matapolis.

67.     Upon information and belief, P.O. Wagner was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD.  Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Wagner received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks.  Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein.  In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

68.     Upon information and belief, Sgt. Milligan was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD.  Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including Sgt. Milligan received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks.  Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein.

In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

69. Upon information and belief, P.O. Messina was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Messina received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein. In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

70. Upon information and belief, P.O. Fletcher was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Fletcher received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein.

In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

71. Upon information and belief, Sgt. Armstrong was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including Sgt. Armstrong received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein. In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

72. Upon information and belief, P.O. Moore was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Moore received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein.

In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

73.     Upon information and belief, P.O. Tate was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Tate received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein. In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

74.     Upon information and belief, P.O. Doe was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Doe received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein. In

this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

75. Upon information and belief, Det. Kelly was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including Det. Kelly received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein. In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

76. Upon information and belief, P.O. Nelson was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Nelson received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein.

In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

77. Upon information and belief, P.O. Matapolis was a graduate of the Police Academy of The City of New York, where he received training and instruction set forth and sanctioned by The City and NYPD. Further, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including P.O. Matapolis received training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein. In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

78. At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Wagner, to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

79. At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, Sgt. Milligan to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

80.     At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Messina to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

81.     At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Fletcher to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

82.     At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, Sgt. Armstrong to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

83.     At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Moore to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

84.     At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Tate to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the

unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

85.   At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Doe to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

86.   At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, Det. Kelly to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

87.   At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Nelson to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

88.   At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Matapolis to conform his conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting himself in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

89.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Wagner, in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

90.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, Sgt. Milligan in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

91.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Messina in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

92.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Fletcher in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

93.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, Sgt. Armstrong in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

94.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Moore in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

95.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Tate in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

96.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Doe in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

97.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, Det. Kelly in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

98.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Nelson in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

99.    At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, P.O. Matapolis in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

100.    At all times relevant herein, financial incentive caused by low pay and unlimited overtime, coupled with minimized culpability for baseless arrests and a lowered probable cause standard constitutes policy, custom and practice resulting in civil rights violations because police are encouraged and incentivized to falsely arrest and maliciously prosecute individuals without reason, cause or justification, thereby violating the rights of the public at large, including the plaintiff herein.

101.    That at all relevant times herein, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

102.    At all times hereinafter mentioned, upon information and belief, P.O. Wagner was acting in his capacities as employee, agent or servant of The City.

103.    At all times hereinafter mentioned, upon information and belief, Sgt. Milligan was acting in his capacities as employee, agent or servant of The City.

104.   At all times hereinafter mentioned, upon information and belief, P.O. Messina was acting in his capacities as employee, agent or servant of The City.

105.   At all times hereinafter mentioned, upon information and belief, P.O. Fletcher was acting in his capacities as employee, agent or servant of The City.

106.   At all times hereinafter mentioned, upon information and belief, Sgt. Armstrong was acting in his capacities as employee, agent or servant of The City.

107.   At all times hereinafter mentioned, upon information and belief, P.O. Moore was acting in his capacities as employee, agent or servant of The City.

108.   At all times hereinafter mentioned, upon information and belief, P.O. Tate was acting in his capacities as employee, agent or servant of The City.

109.   At all times hereinafter mentioned, upon information and belief, P.O. Doe was acting in his capacities as employee, agent or servant of The City.

110.   At all times hereinafter mentioned, upon information and belief, Det. Kelly was acting in his capacities as employee, agent or servant of The City.

111.   At all times hereinafter mentioned, upon information and belief, P.O. Nelson was acting in his capacities as employee, agent or servant of The City.

112.   At all times hereinafter mentioned, upon information and belief, P.O. Matapolis was acting in his capacities as employee, agent or servant of The City.

113.   At all times hereinafter mentioned, P.O. Wagner was acting under color of law.

114.   At all times hereinafter mentioned, Sgt. Milligan was acting under color of law.

115.   At all times hereinafter mentioned, P.O. Messina was acting under color of law.

116.   At all times hereinafter mentioned, P.O. Fletcher was acting under color of law.

117.   At all times hereinafter mentioned, Sgt. Armstrong was acting under color of law.

118.   At all times hereinafter mentioned, P.O. Moore was acting under color of law.

119.   At all times hereinafter mentioned, P.O. Tate was acting under color of law.

120.   At all times hereinafter mentioned, P.O. Doe was acting under color of law.

121.   At all times hereinafter mentioned, Det. Kelly was acting under color of law.

122.   At all times hereinafter mentioned, P.O. Nelson was acting under color of law.

123.   At all times hereinafter mentioned, P.O. Matapolis was acting under color of law.

124.   At all times hereinafter mentioned, the defendants' acts constituted state action.

125.   That at all times hereinafter mentioned, P.O. Wagner was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

126.   That at all times hereinafter mentioned, Sgt. Milligan was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

127.   That at all times hereinafter mentioned, P.O. Messina was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

128.   That at all times hereinafter mentioned, P.O. Fletcher was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

129.   That at all times hereinafter mentioned, Sgt. Armstrong was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

130.    That at all times hereinafter mentioned, P.O. Moore was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

131.    That at all times hereinafter mentioned, P.O. Tate was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

132.    That at all times hereinafter mentioned, P.O. Doe was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

133.    That at all times hereinafter mentioned, Det. Kelly was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

134.    That at all times hereinafter mentioned, P.O. Nelson was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

135.    That at all times hereinafter mentioned, P.O. Matapolis was on duty and/or acting as employee, agent or servant of The City and was also present at the same time and in the same place as plaintiff as aforesaid.

## STATEMENT OF FACTS

136.    That at all times herein, Mr. Anderson was a lawful citizen abiding by all laws, statutes and ordinances of the State of New York and the United State of America.

137.    That on August 12, 2011, Mr. Anderson was the lawful owner and operator of a Ford E-150 van ("van").

138.   That on August 12, 2011, P.O. Wagner of the 107th Precinct was operating a police vehicle bearing New York State License Plate Number 8527 ("Wagner Vehicle").

139.   That on August 12, 2011, P.O. Wagner stopped the van and forced it to pull over without cause or justification.

140.   That on August 12, 2011, P.O. Wagner unlawfully forced Mr. Anderson to remain at the scene.

141.   That on August 12, 2011, P.O. Wagner claimed that he stopped Mr. Anderson because he was speeding.

142.   That on August 12, 2011, P.O. Wagner then changed his reason entirely and claimed that he stopped Mr. Anderson because he failed to stop for a stop sign.

143.   That on August 12, 2011, P.O. Wagner then changed his reason entirely and claimed that he stopped Mr. Anderson for the van's allegedly tinted rear windows.

144.   That defendant, Sgt. Milligan, arrived at the scene and unlawfully searched the van.

145.   That at all times herein, there was no cause, basis or justification to stop or search the van.

146.   That there was nothing illegal or suspicious in the van.

147.   That the only items in the van were spare parts for the van.

148.   That P.O. Wagner and Sgt. Milligan falsely and fraudulently issued Mr. Anderson a summons for transportation of building materials.

149.   That on or about December 26, 2011, P.O. Wagner falsely and fraudulently testified before a criminal Court that he pulled Mr. Anderson over for failing to stop at a stop sign.

150.   That on or about December 26, 2011, the charges pertaining to the August 12, 2011 arrest were dismissed.

151. That on a recurring, continuing and ongoing basis subsequent to August 12, 2011, defendants, including officers of the 105th, 107th and 113th Precincts, have maintained and perpetrated a consistent and habitual practice, pattern and procedure to unlawfully, illegally and unjustly harass, stop, search, terrorize, assault, batter and brutalize Mr. Anderson, and deprive him of his civil rights and liberties in retaliation for his defense against the unlawful imprisonment, false charges and malicious prosecution stemming from the August 12, 2011 illegal and unlawful stop ("retaliation").

152. That at all times herein, defendants, their agents, servants and/or employees who participated in the arrest and investigation, imprisonment and prosecution of Mr. Anderson, were following a custom and practice of retribution and retaliation taken on behalf of P.O. Wagner and Sgt. Milligan against Mr. Anderson.

153. That on August 19, 2011, Mr. Anderson was again lawfully operating his van on 148th Street at and about its intersection with 115th Avenue in the County of Queens and State of New York.

154. That on August 19, 2011, Lt. Messina, of the 113th Precinct stopped the van and forced it to pull over without cause, basis or justification, but rather, solely as an act of retaliation.

155. That on August 19, 2011 Lt. Messina falsely and fraudulently alleged that he pulled Mr. Anderson over because there was scrap metal in the van, without any basis of knowledge as to the contents of the van.

156. That on August 19, 2011, Lt. Messina requested Mr. Anderson's consent to search the van, which Mr. Anderson lawfully, peacefully and passively declined.

157.   That on August 19, 2011, Lt. Messina forced open the van and searched it anyway, notwithstanding that he did not have Mr. Anderson's consent and did not have probable cause to do so.

158.   That on August 19, 2011, the illegal search resulted in absolutely nothing untoward being found in the van.

159.   That on August 19, 2011, after the illegal search, no summons, citations or ticket was issued to Mr. Anderson.

160.   That on August 25, 2011, Mr. Anderson was again lawfully operating the van upon a public roadway in the County of Queens and State of New York.

161.   That on August 25, 2011, P.O. Fletcher and Sgt. Armstrong were traveling in a NYPD van bearing the New York State License Plate Number 5900 ("police van").

162.   That on August 25, 2011, P.O. Fletcher and Sgt. Armstrong, stopped Mr. Anderson's van and forced it to pull over without cause, basis or justification, but rather, solely as an act of retaliation.

163.   That on August 25, 2011, P.O. Fletcher and Sgt. Armstrong falsely and fraudulently accused Mr. Anderson of driving with a malfunctioning brake light.

164.   That at all times herein, Mr. Anderson's brake lights were in fact, fully functional.

165.   That P.O. Fletcher and Sgt. Armstrong issued neither a summons nor ticket to Mr. Anderson.

166.   That on August 26, 2011, Mr. Anderson was lawfully operating his van on Sutphin Boulevard between 122nd Street and 123rd Street in the County of Queens and State of New York.

167.   That on August 26, 2011, P.O. Moore, stopped the van and forced it to pull over without cause, basis or justification, but rather solely as an act of retaliation.

168.    That on August 26, 2011, defendant, P.O. Fletcher arrived at the scene in the police van and warned P.O. Moore that Mr. Anderson will record the event on video.

169.    That as a result, both officers immediately fled the scene without any explanation, or justification, for their stopping Mr. Anderson in the first instance.

170.    That no summons or ticket was issued to Mr. Anderson.

171.    That on September 7, 2011, Mr. Anderson was a lawful pedestrian traversing upon the sidewalk located at 119th Avenue between 152nd Street and 153rd Street in the County of Queens and State of New York.

172.    That on September 7, 2011, Mr. Anderson's van was lawfully and legally parked on the 119th Avenue roadway.

173.    That on September 7, 2011, Mr. Anderson attempted to enter his van.

174.    That on September 7, 2011, a NYPD Narcotics Division van drove up to Mr. Anderson and several officers exited it, including defendants, P.O. Tate and P.O. John Doe.

175.    That on September 7, 2011, P.O. Tate forcefully grabbed Mr. Anderson's arm to prevent him from entering his van unlawfully and without cause or justification, but rather, solely as an act of retaliation.

176.    That on September 7, 2011, P.O. Tate obscured the number on his shield with a black band in an attempt obscure his identity.

177.    That on September 7, 2011, upon Mr. Anderson's request, P.O. John Doe stated that his shield number is "911."

178.    That on September 7, 2011, P.O. Tate and P.O. John Doe then searched Mr. Anderson's van illegally, unjustly and without cause.

179.   That on September 7, 2011, Mr. Anderson called 911 to report this act of police abuse and illegal conduct.

180.   That on September 7, 2011, immediately thereafter, the police officers who were illegally searching Mr. Anderson's van fled the scene.

181.   That no summons or ticket was issued to Mr. Anderson.

182.   That on September 16, 2011, was a pedestrian lawfully traversing upon on the sidewalk located on 153rd Street at and about its intersection with 118th Avenue in the County of Queens and State of New York.

183.   That on September 16, 2011, Mr. Anderson's van was lawfully and legally parked upon the 153rd Street roadway.

184.   That on September 16, 2011, a neighbor was returning a car jack to Mr. Anderson, which he had previously borrowed.

185.   That on September 16, 2011, an unmarked NYPD vehicle ("cruiser") containing Det. Kelly and P.O. Nelson pulled up behind Mr. Anderson's vehicle.

186.   That on September 16, 2011, Det. Kelly and P.O. Nelson exited the cruiser and approached Mr. Anderson.

187.   That on September 16, 2011, Det. Kelly and P.O. Nelson unlawfully stopped Mr. Anderson without cause or justification, but rather, solely as an act of retaliation.

188.   That on September 16, 2011, Det. Kelly and P.O. Nelson attempted to search Mr. Anderson without cause, basis or justification.

189.   That on September 16, 2011, Det. Kelly threatened to arrest Mr. Anderson without cause, basis or justification.

190.    That on September 16, 2011, Det. Kelly and P.O. Nelson cursed and forced Mr. Anderson to produce identification, without any cause, basis or justification.

191.    That on September 16, 2011, Det. Kelly and P.O. Nelson falsely and fraudulently alleged that they had observed another person hand contraband to Mr. Anderson.

192.    That on September 16, 2011, Mr. Anderson explained that his neighbor was simply returning a borrowed car jack.

193.    That on September 16, 2011, the car jack was patently not contraband or illegal in any manner whatsoever; and this fact was and should have been obvious to the most casual observer.

194.    That on September 16, 2011, Det. Kelly and P.O. Nelson unlawfully and illegally arrested and handcuffed Mr. Anderson solely as an act of retaliation.

195.    That on September 16, 2011, Det. Kelly and P.O. Nelson handcuffed Mr. Anderson unnecessarily and unreasonably tight and painfully restrained his arms behind his back thereby causing injury, pain, suffering and emotional distress.

196.    That on September 16, 2011, the handcuffs did not have a tightening-prevention mechanism, so that they continued to tighten more painfully around Mr. Anderson's wrists.

197.    That on September 16, 2011, Det. Kelly and P.O. Nelson refused Mr. Anderson's repeated requests and complaints to loosen the handcuffs.

198.    That on September 16, 2011, Det. Kelly and P.O. Nelson repeatedly physically and verbally assaulted plaintiff after the handcuffs were applied and plaintiff was restrained.

199.    That on September 16, 2011, Det. Kelly and P.O. Nelson threatened Mr. Anderson repeatedly and cursed at him.

200.    That on September 16, 2011, Det. Kelly and P.O. Nelson, for no reason at all, assaulted Mr. Anderson and battered him about his head, torso and body.

201. That on September 16, 2011, Det. Kelly and P.O. Nelson unlawfully struck Mr. Anderson with closed fist, feet and foreign objects.

202. That on September 16, 2011, Det. Kelly admitted that he was arresting Mr. Anderson in retaliation for Mr. Anderson continued complaints regarding police conduct and treatment of him.

203. That on September 16, 2011, Mr. Anderson cooperated and complied with the illegal and baseless demands of the defendants' officers.

204. That on September 16, 2011, Det. Kelly and P.O. Nelson placed Mr. Anderson in the back of the cruiser without cause, basis or justification.

205. That on September 16, 2011, Mr. Anderson was driven while detained in the cruiser and then transferred to a black, unmarked police van ("unmarked van").

206. That on September 16, 2011, Mr. Anderson was driven while detained in the van for approximately two and one half (2 1/2) hours, as the defendants' officers searched for other innocent and lawful citizens whom they could arbitrarily and unlawfully arrest in furtherance to a quota.

207. That on September 16, 2011, Mr. Anderson did not resist or obstruct his arrest in any way.

208. That on September 16, 2011, defendants transported Mr. Anderson to the 113th Precinct, without any cause, basis or justification.

209. That on September 16, 2011, Mr. Anderson remained falsely and unlawfully imprisoned at the 113th Precinct, without any cause, basis or justification.

210. That on September 16, 2011, Mr. Anderson was taken from the 113th Precinct to Central Booking where he remained falsely and unlawfully imprisoned for more than approximately twenty four (24) hours, without any cause, basis or justification where he was forced to defend

himself and answer for unjust and baseless false charges, which were the subject of the malicious prosecution that was initiated by the defendants.

211.    That on September 16, 2011, the arrest of Mr. Anderson by the individual defendants was perpetrated without a warrant or other legal process and without probable cause.

212.    That on or about September 17, 2011, Det. Kelly and P.O. Nelson made false representations, accusations, allegations and complaints concerning Mr. Anderson to agents, servants and/or employees of NYPD and The City, and the Queens County District Attorney's Office acted on the representations of the defendants herein and initiated criminal proceedings against the plaintiff herein.

213.    Furthermore, the defendants knew that the District Attorney's Office would rely upon their representations and the defendants knew that the District Attorney's Office would file criminal charges and prosecute the plaintiff based upon their representations and the allegations and facts that these named individual defendants communicated to the District Attorney's Office.

214.    Additionally, the individual defendants knew that the allegations that they communicated to the District Attorney's Office were false, exaggerated, inaccurate and untrue but they communicated said allegations nonetheless, knowing that plaintiff would be subjected to a criminal prosecution and knowing that the plaintiff's freedom and liberty would be jeopardized and, if convicted upon the false charges, plaintiff would be incarcerated, thereby losing his freedom and liberty.

215.    That the individually named defendants, state actors, were acting pursuant to a policy, custom and practice, which was formulated, designed and implemented by the defendants The City and NYPD, and which policy, custom and practice required the individually named defendants to make a certain, predetermined number and amount of arrests each week, month and year, irrespective

of the conditions or lack of criminal conduct that existed in their precinct or sector during their shifts or tours.

216.   That these policies also included financial incentive caused by low pay and unlimited overtime, coupled with minimized culpability for baseless arrests and a lowered probable cause standard constitutes policy, custom and practice resulting in civil rights violations because police are encouraged and incentivized to falsely arrest and maliciously prosecute individuals without reason, cause or justification, thereby violating the rights of the public at large, including the plaintiff herein.

217.   That policies, customs and practices also encouraged, taught, instructed and/or required police officers to make arrests, stops, detentions and to target members of the public based on their appearance, race, ethnicity and irrespective of their conduct, lawful or otherwise, thereby violating the rights of the public, including the plaintiff herein.

218.   These policies, customs and practices were designed and formulated by the defendants The City and NYPD and implemented and effectuated by its officers, by their very nature violated the rights of the public, and violated the rights of the plaintiff herein.

219.   That at all times relevant herein, the agents, servants and/or employees of NYPD and The City, including, but not limited to, P.O. Wagner, Sgt. Milligan, P.O. Messina, P.O. Fletcher, Sgt. Armstrong, P.O. Moore, P.O. Tate, P.O. Doe, Det. Kelly, P.O. Nelson and P.O. Matapolis, knew or reasonably should have known that Mr. Anderson was innocent of all allegations against him.

220.   That at all times relevant herein, the agents, servants and/or employees of NYPD and The City, including, but not limited to, P.O. Wagner, Sgt. Milligan, P.O. Messina, P.O. Fletcher, Sgt. Armstrong, P.O. Moore, P.O. Tate, P.O. Doe, Det. Kelly, P.O. Nelson and P.O. Matapolis, actually knew or reasonably should have known that the allegations against Mr. Anderson were fabricated and fraudulent.

221. That at all times relevant herein, the agents, servants and/or employees of NYPD and The City, including, but not limited to, P.O. Wagner, Sgt. Milligan, P.O. Messina, P.O. Fletcher, Sgt. Armstrong, P.O. Moore, P.O. Tate, P.O. Doe, Det. Kelly, P.O. Nelson and P.O. Matapolis, conspired to fraudulently and maliciously accuse Mr. Anderson of crimes of which he was innocent ("the malfeasance").

222. That further to the malfeasance, Det. Kelly and P.O. Nelson initially arrested Mr. Anderson for no legal or just reason; however, on September 17, 2011, defendants swore in a deposition and issued Mr. Anderson a Summons, charging him falsely with NYPL § 205.30 (resisting a lawful arrest) and two (2) counts of NYPL § 240.20 (disorderly conduct), under Queens County Criminal Court Docket Number 2011QN050270 ("false charges").

223. That defendants knew, and/or reasonably should have known, that there was no basis whatsoever to charge Mr. Anderson with the false charges.

224. Moreover, the complete and utter lack of merit and baseless nature of any conceivable criminal investigation and/or criminal prosecution of Mr. Anderson was readily apparent and patently obvious to all defendants but yet said criminal investigation and/or criminal prosecution of Mr. Anderson continued unabated, causing serious injury to Mr. Anderson and infringing, violating and rupturing his civil rights.

225. That defendants, their agents, servants, and/or employees unlawfully and falsely arrested and imprisoned Mr. Anderson in furtherance to the malfeasance.

226. That at all times relevant herein, Det. Kelly and P.O. Nelson used excessive force and physical force upon Mr. Anderson causing him to sustain severe and permanent injuries, despite the fact that plaintiff did not pose a threat to the physical safety of either officer, or to the public at large, or to any third party.

227. Furthermore, the defendants used excessive force against the plaintiff despite the plaintiff's submissive and non-threatening conduct which was duly deferential and respectful of the defendants' apparent authority as law enforcement officers and/or state actors engaged in a law enforcement capacity.

228. That at all times relevant herein, during the unlawful apprehension, detention, arrest, imprisonment, assault and battery of Mr. Anderson, the NYPD police officers used excessive, unnecessary and unwarranted force upon Mr. Anderson, without his consent and without justification or legal basis.

229. That at all times relevant herein, Mr. Anderson suffered extreme, disabling and protracted pain to his head, neck, back and limbs as a result of the excessive force.

230. That at all times relevant herein, defendants, their agents, servants and/or employees, while acting in concert, maliciously and with the intent to injure Mr. Anderson, and without just cause or any right to do so, handcuffed, detained, jailed and restrained Mr. Anderson, against his, thereby depriving him of his liberty.

231. That the criminal charges filed against Mr. Anderson were falsely and maliciously fabricated by defendants, their agents, servants and/or employees based on false and incomplete information provided by defendants, their agents, servants and/or employees, in violation of Mr. Anderson's civil rights and in furtherance of the malfeasance.

232. That at all times relevant herein, Det. Kelly and P.O. Nelson, with disregard for proper, lawful, appropriate, correct and effective investigative behaviors and procedures, investigated, stopped, detained, accused, arrested and charged Mr. Anderson when it was not right, just, lawful, proper or necessary to do so.

233. That at all times relevant herein, Det. Kelly and P.O. Nelson placed Mr. Anderson under arrest for crimes that he did not commit.

234. That at all times relevant herein, Mr. Anderson was innocent of the false charges made against him further to the malfeasance.

235. That at all times relevant herein, defendants, their agents, servants and/or employees acted maliciously and intentionally.

236. That at all times relevant herein, the arrest, assault, battery and detention of Mr. Anderson were unlawful, unwarranted and unjustified.

237. That at all times relevant herein, defendants, their agents, servants and/or employees knew or should have known that Mr. Anderson was innocent of the crime charged.

238. That at all times herein mentioned, and without proof that Mr. Anderson was in any way connected to a crime, or that any crime was, in fact, committed, and without reasonable suspicion to stop Mr. Anderson, and without probable cause to detain or arrest Mr. Anderson, defendants, their agents, servants and/or employees individually, and acting in concert, knowingly, unlawfully, wrongfully and in furtherance of the malfeasance fabricated the false charges against Mr. Anderson and set these charges forth in false and fabricated criminal complaints, falsely sworn by the defendant police officers.

239. The criminal complaint and reports against plaintiff were and are false and fraudulent.

240. Based upon the false criminal complaint and complaint reports prepared, upon information and belief, by the defendant employees, the Criminal Court arraigned Mr. Anderson on the false charges.

241.    That at all times herein, defendants, their agents, servants and/or employees, all of whom were acting in the performance of their employment, within the scope of their authority and in furtherance of policies and practices implemented by The City and NYPD.

242.    That at all times herein, said policies and practices included the implementation of a quota system with respect to the quantity of arrests expected and/or required of its police officers, including the aforesaid police officers.

243.    That at all times herein, said policy and practice violated the civil rights of the public, including Mr. Anderson herein.

244.    That at all times herein, Det. Kelly and P.O. Nelson caused the unlawful investigation of Mr. Anderson and the false arrest, unlawful imprisonment and malicious prosecution.

245.    That at all times herein, defendants, their agents, servants and/or employees have an unlawful policy and practice that utilizes racial profiling when conducting investigations and performing its duties.

246.    That Mr. Anderson was required to repeatedly appear in court to defend himself from the false charges.

247.    That all charges stemming from the above were dismissed.

248.    That defendants caused Mr. Anderson to suffer psychological and emotional injuries and damage as a result of the events described herein.

249.    That subsequent to the dismissal of the above charges, the defendants' officers continued to frivolously and baselessly retaliate against Mr. Anderson.

250.    In that regard, and further to the retaliation, on December 21, 2011, Mr. Anderson was operating his van and traveling westbound on 91st Avenue between 215th Street and 216th Street in the County of Queens and State of New York.

251.    That on December 21, 2011, P.O. Matapolis of the 105th Precinct was operating a police vehicle bearing New York State License Plate number 3107 and was traveling eastbound on 91st Avenue.

252.    That on December 21, 2011, P.O. Matapolis made an illegal U-turn in the middle of 91st Avenue and stopped Mr. Anderson without cause, basis or justification, but rather, solely as an act of retaliation.

253.    That on December 21, 2011, P.O. Matapolis falsely and fraudulently alleged that he stopped Mr. Anderson because his van's tail light was not functioning.

254.    That on December 21, 2011, Mr. Anderson's tail light was in fact fully functional.

255.    That on December 21, 2011, when Mr. Anderson requested P.O. Matapolis' shield number, P.O. Matapolis provided a false and fraudulent shield number, "24567", because he knew that his conduct was illegal and unjust.

256.    That P.O. Matapolis attempted to hide his identity from Mr. Anderson by making an illegal u-turn behind his van, and drove eastbound on 91st Avenue, so as not to drive past Mr. Anderson.

257.    That notwithstanding, Mr. Anderson turned around in his seat while P.O. Matapolis was walking back to his vehicle and read the plate number, which was 3107.

258.    That no summons or ticket was issued to Mr. Anderson.

259.    By reason of the foregoing acts of the defendants, and as a direct and proximate result of the acts of the defendants, Mr. Anderson suffered severe and permanent personal injuries and damages, and upon information and belief, will continue to suffer pain in the future.

260.    By reason of the foregoing acts of the defendants, Mr. Anderson was caused severe and intense emotional and psychological anguish, distress and embarrassment and will continue to suffer same in the future.

261.    By reason of the foregoing, Mr. Anderson was compelled to and did necessarily, require medical attention and did necessarily pay and become liable therefore, and will necessarily continue to incur similar expenses in the future.

262.    By reason of the foregoing, Mr. Anderson was compelled to, and did necessarily incur legal fees and did necessarily pay and become liable therefore, and will necessarily incur similar legal fees in the future.

## PROCEDURAL PREREQUISITES

263.    The plaintiff has satisfied all prerequisites for filing suits.

264.    The defendants and the comptroller have failed, neglected, and refused to pay, settle, compromise, or adjust the claim of the plaintiff herein.

265.    This action has been commenced within three (3) years after the cause of action of plaintiff accrued.

266.    Plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

## FIRST CAUSE OF ACTION
### FALSE ARREST

267.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 266, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

268.   Defendants had no probable cause to believe that plaintiff had committed a crime and plaintiff did not engage in any conduct that warranted his arrest.

269.   As a result of the aforesaid conduct by defendants, Mr. Anderson was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained and confined without probable cause, privilege or consent.

270.   By reason of their aforesaid conduct, defendants falsely arrested the plaintiff and thereby violated his rights under New York state law and under the Fourth and Fourteenth Amendments to the United States Constitution.

271.   That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Anderson suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## SECOND CAUSE OF ACTION
FALSE IMPRISONMENT

272.   Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 271, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

273.   By reason of defendants' aforesaid conduct, plaintiff was detained without his consent and defendants knew he was detained against his consent.

274. That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Anderson suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

### THIRD CAUSE OF ACTION
AGAINST INDIVIDUAL DEFENDANTS
VIOLATION OF CIVIL RIGHTS AFFORDED BY
42 U.S.C. §1983, §1985 AND §1988

275. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 274, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

276. The defendants, acting in concert and individually and under the color of law, have deprived the plaintiff of his civil, constitutional and statutory rights and have conspired to deprive the plaintiff of such rights under 4th and 14th amendments and are liable to the plaintiff under the 5th amendment, 8th amendment, 42 U.S.C. §1983, §1985 and §1988.

277. As a result of the foregoing, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an

amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FOURTH CAUSE OF ACTION
### MUNICIPAL LIABILITY AGAINST DEFENDANTS
### CITY OF NEW YORK AND NEW YORK CITY POLICE DEPARTMENT
### VIOLATION OF CIVIL RIGHTS AFFORDED BY
### 42 .S.C. §1983, §1985 AND §1988

278.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 277, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

279.    Defendants The City and NYPD knew or should have known of its employees, agents and/or servants propensity to engage in the illegal and wrongful acts detailed above.

280.    Prior to the dates of occurrence as set forth herein, The City and NYPD developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of New York, which policies and/or customs caused the violation of the plaintiff's rights.

281.    At all relevant times herein, while at The Police Academy and intermittently thereafter, Patrol Officers and Police Officers including the named defendants receive training and instruction formulated by The City and NYPD and said training includes instruction as to custom and practice of The City and NYPD and same relates to the arrest procedure and procedure surrounding stops and frisks. Said custom and practice, and said training and instruction regarding arrests, stops and frisks, by the very nature of the custom and practice violate the civil rights of the public, including the plaintiff herein, and said custom and practice infringe upon the rights of the public at large, including the plaintiff herein. In this subject case, the enforcement of the said custom and practice did in fact violate the rights of the plaintiff herein.

282.    Prior to and including the dates of occurrences as set forth herein, upon information and belief, The City and NYPD developed and maintained policies and/or customs contributing to the causation of the subject incidents and the plaintiff's injuries, such as racial profiling and the use and enforcement of a quota system with respect to stops, frisks, searches, police encounters, investigations and arrests.

283.    Upon information and belief, it was the policy and/or custom of The City and NYPD to improperly and inadequately investigate citizen and other complaints of police misconduct, and acts of misconduct were instead tolerated by The City and NYPD, including, but not limited to the incidents where defendants and their supervisors have in the past falsely arrested individuals without probable cause, and made, and allowed other fellow police officers and others of its employees to make false entries in official police department records, and to issue false and fraudulent criminal complaints and accusatory instruments, to cover up and hide their wrongful conduct.

284.    It was the policy and/or custom of The City and NYPD to fail to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City and NYPD did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

285.    Further, The City and NYPD put into place financial incentive caused by low pay and unlimited overtime, coupled with minimized culpability for baseless stop and frisks and a lowered probable cause standard constitutes policy that creates a custom and practice resulting in civil rights violations because police are encouraged and incentivized to falsely arrest and maliciously prosecute

individuals without reason, cause or justification, thereby violating the rights of the public at large, including the plaintiff herein.

286.    As a result of the above described policies and/or customs, police officers of NYPD believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

287.    The above policies and/or customs demonstrated a deliberate indifference on the part of the policymakers of The City and NYPD to the constitutional rights of persons within the City of New York and were the cause of the violations of the plaintiff's rights alleged herein.

288.    As a result of the foregoing, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### FIFTH CAUSE OF ACTION
UNREASONABLE AND EXCESSIVE FORCE
VIOLATION OF CIVIL RIGHTS AFFORDED BY
42 .S.C. §1983, §1985 AND §1988

289.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 288, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

290.    By their conduct, defendants under color of law deprived Mr. Anderson of his constitutional rights to be free from excessive and unreasonable force.

291.    Plaintiff claims compensatory and punitive damages for the injuries set forth above and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SIXTH CAUSE OF ACTION
### ASSAULT AND BATTERY

292.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 291, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

293.    By reason of defendants' aforesaid acts, specifically in the course of their false arrest and imprisonment of the plaintiff, defendants committed the torts of assault and battery upon him.

294.    That at all relevant times herein, defendants, their agents, servants and/or employees were under a duty to protect Mr. Anderson from the violation of his civil rights, menacing, assault, battery, excessive force, brutality, and/or other intentional acts, negligence, recklessness and/or want of care in his unlawful detention and/or arrest by the NYPD police officers committing said acts.

295.    That at all relevant times herein, defendants, their agents, servants and/or employees menaced, assaulted, battered, and used excessive force, maliciousness and brutality in the arrest, detention and custody of Mr. Anderson.

296.    That at all relevant times herein, defendants, their agents, servants and/or employees caused Mr. Anderson to reasonably apprehend that he was about to be harmfully and offensively contacted in his arrest and detention.

297.    That at all relevant times herein, defendants, their agents, servants and/or employees offensively contacted and harmed Mr. Anderson during his arrest and detention.

298.    That at all relevant times herein, defendants, their agents, servants and/or employees acted in an unsafe and unreasonable manner in the arrest, detention and custody of Mr. Anderson under the circumstances and conditions then and there existing.

299.    That at all relevant times herein, defendants, their agents, servants and/or employees were negligent, reckless and intentional in their failure to protect Mr. Anderson from the violation of his civil rights, menacing, assault, battery, excessive force and brutality in his arrest and/or detention.

300.    That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

301.    That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Anderson suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

**SEVENTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

302.  Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 301, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

303.  By their foregoing acts, specifically their false arrest and unlawful imprisonment of him, their assault and battery upon him, defendants intended to and did cause the foregoing harm to plaintiff.

304.  That at all times relevant herein, defendants, their agents, servants and/or employees acted intentionally and/or with a reckless disregard for the likelihood of causing emotional distress to plaintiff in fraudulently and maliciously pursuing the malfeasance, including all acts further thereto as set forth above.

305.  That at all times relevant herein, defendants, their agents, servants and/or employees acted intentionally and/or with a reckless disregard for the likelihood of causing emotional distress to plaintiff in being verbally abusive, intimidating and threatening to him.

306.  That at all times relevant herein, defendants, their agents, servants and/or employees acted heinously and beyond the standards of civilized decency.

307.  That at all times relevant herein, defendants, their agents, servants and/or employees' conduct was utterly intolerable in a civilized society.

308.  That at all times relevant herein, defendants, their agents, servants and/or employees committed these acts in public.

309.  That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Anderson suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life;

economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## **EIGHTH CAUSE OF ACTION**
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

310.   Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 309, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

311.   That at all times relevant herein, defendants, their agents, servants and/or employees were under an affirmative duty to refrain from abusing their power and position and from fraudulently and maliciously pursuing the malfeasance, including all acts further thereto as set forth above.

312.   That at all times relevant herein, defendants, their agents, servants and/or employees knew or reasonably should have known that the malfeasance could lead to plaintiff's harm.

313.   That at all times relevant herein, plaintiff justifiably relied upon defendants, their agents, servants and/or employees to conduct themselves properly as public officials and not to abuse their power and position in the manner as set forth above.

314.   That at all times relevant herein, defendants, their agents, servants and/or employees breached their duty to plaintiff by abusing their power and position as set forth above.

315.   That at all times relevant herein, defendants, their agents, servants and/or employees were under an affirmative duty to treat plaintiff with courtesy, professionalism and respect.

316.    That at all times relevant herein, defendants, their agents, servants and/or employees knew or reasonably should have known that failing and/or refusing to treat plaintiff with courtesy, professionalism and respect could lead to his harm under the circumstances then and there existing.

317.    That at all times relevant herein, plaintiff justifiably relied upon defendants, their agents, servants and/or employees to treat him with courtesy, professionalism and respect.

318.    That at all times relevant herein, defendants, their agents, servants and/or employees breached their duty to plaintiff in being verbally abusive, intimidating and threatening to him and his family.

319.    That solely as a result of the negligence of defendants as aforesaid, Mr. Anderson suffered injuries including but not limited to severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, severe and permanent personal physical injuries, loss of enjoyment of life, had his civil rights violated, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## NINTH CAUSE OF ACTION
### FAILURE TO INTERVENE

320.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 319, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

321.    Each and every individual defendant had an affirmative duty to intervene on Mr. Anderson's behalf to prevent the violation of his constitutional rights.

322.     The individual defendants failed to intervene on Mr. Anderson's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

323.     As a result of the aforementioned conduct of the individual defendants, Mr. Anderson's constitutional rights were violated and he was subjected to excessive force, causing him to suffer injuries including but not limited to severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, severe and permanent personal physical injuries, loss of enjoyment of life, had his civil rights violated, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## **TENTH CAUSE OF ACTION**
MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

324.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 323, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

325.     Defendants abused the legal process to place Mr. Anderson under arrest.

326.     Defendants arrested Mr. Anderson in order to obtain a collateral objective outside the legitimate ends of the legal process.

327.     Defendants acted with intent to do harm to Mr. Anderson without excuse or justification.

328.     That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Anderson suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and

permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## ELEVENTH CAUSE OF ACTION
### DELAY AND DENIAL OF MEDICAL TREATMENT AND FAILURETO PROTECT WHILE IN CUSTODY VIOLATION OF CIVIL RIGHTS AFFORDED BY 42 .S.C. § 1983, § 1985 AND § 1988

329.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 328, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

330.     By their conduct and under color of law, defendants deprived Mr. Anderson of his constitutional rights to immediate medical treatment and failed to protect him once he became a prisoner, thus perpetuating and exacerbating his physical and mental pain and suffering.

331.     As a result of the foregoing, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TWELFTH CAUSE OF ACTION
### NEGLIGENT HIRING AND RETENTION

332.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 331, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

333.    Upon information and belief, defendants failed to use reasonable care in the hiring and retention of the aforesaid defendants who conducted and participated in the arrest of Mr. Anderson.

334.    Defendants knew, or should have known in the exercise of reasonable care, the propensities of the individual defendants to engage in the wrongful conduct heretofore alleged in this Verified Complaint.

335.    That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Anderson suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

**THIRTEENTH CAUSE OF ACTION**
NEGLIGENT TRAINING AND SUPERVISION

336.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 335, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

337.    Upon information and belief, defendants failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the arrest of Mr. Anderson.

338.    That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Anderson suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## FOURTEENTH CAUSE OF ACTION
### MALICIOUS PROSECUTION

339.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 338, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

340.    As a result of the foregoing malicious prosecution, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FIFTEENTH CAUSE OF ACTION
### NEGLIGENCE

341.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 340, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

342.    That defendants were negligent in the false arrests, unlawful imprisonments and malicious prosecution of Mr. Anderson; in failing to use such care in the performance of police duties as a reasonably prudent and careful police officer would have used under similar circumstances without any negligence on the part of Mr. Anderson contributing thereto; and defendants were negligent in hiring and retaining a persons who were unfit to serve as police officers and who they knew or should have known had dangerous propensities and lack of proper temperament, in that defendants failed to exercise reasonable precautions in employing the aforesaid police officers and failing to properly investigate their background and that these police officers were otherwise unfit to serve as police officers for defendants; and defendants were negligent in its instructions of its police officers by not exercising care in instructing them as to their deportment, behavior and conduct as police officers and representatives of defendants and in training and instructions, among other things of the proper conduct of police officers in making an arrest and what they should do following an arrest of an individual.

343.    That defendants are liable for the conduct of their agents, servants and/or employees by virtue of *respondeat superior.*

344.    As a result of the foregoing, plaintiff suffered injuries including but not limited to severe and permanent personal physical injuries, loss of freedom, loss of enjoyment of life, had his civil rights violated, severe and permanent emotional injuries, severe and permanent psychological injuries, anguish, distress, humiliation, embarrassment, shame, lost earnings, medical expenses and legal expenses and claims damages for the aforesaid injuries and accordingly has been damaged in an

amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SIXTEENTH CAUSE OF ACTION
PUNITIVE DAMAGES

345.   Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 344, inclusive, of this Complaint, with the same force and effect as though more fully set forth at length herein.

346.   Due to the above, Mr. Anderson should be awarded punitive damages as against the defendants in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

**WHEREFORE,** plaintiff, REGINALD ANDERSON, demands judgment against the defendants stated herein under the first cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter; under the second cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter; under the third cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter; under the fourth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter; under the fifth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter; under the sixth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter; under the seventh cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter; under the eighth cause of action in an

amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, under the ninth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, under the tenth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, under the eleventh cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, under the twelfth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, under the thirteenth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, under the fourteenth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, under the fifteenth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, and under the sixteenth cause of action in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter, together with the costs and disbursements of this action.

Dated: Brooklyn, New York
       October 16, 2013

                                    LAW OFFICES OF PHILIP J. SPORN
                                    Attorneys for Plaintiff
                                    52 Lincoln Road
                                    Brooklyn, New York 11225
                                    (718) 282-4166

                  By:      _____
                           Philip J. Sporn, Esq.

## **VERIFICATION**

STATE OF NEW YORK}

             ss:

COUNTY OF KINGS}

        REGINALD ANDERSON, being duly sworn deposes and states as follows:

I have read the foregoing     COMPLAINT     and know the contents

thereof. The same is true to my knowledge, except as to those matters therein, which are alleged

upon information and belief. The grounds of my belief as to all matters not stated upon my own

knowledge are as follows: records, reports, and correspondence. I affirm that the foregoing

statements are true, under the penalties of perjury.


In Witness Whereof, has hereunto set her hand and seal on this 16th

day of October , 2012.

                                        REGINALD ANDERSON

STATE OF NEW YORK) COUNTY OF KINGS) ss.:

        On    10 / 16    , 2012 before me personally came REGINALD ANDERSON, to

me known, and known to me to be the individual described in, and who executed the foregoing

authorization, and duly acknowledged to me that he executed the same.

               PHILIP J. SPORN
               Notary Public, State of New York
               No. 02SP5040336
               Qualified in New York County
               Term Expires September 13, 2015

                         PHILIP J. SPORN